IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER F. JONES, | ) | Case No. 1:15CV1927 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE JAMES G. CARR |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| ERNIE MOORE, Warden, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | **OF MAGISTRATE JUDGE** |

This matter is before the undersigned on a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, executed, *pro se*, by Petitioner Christopher Jones ("Petitioner") on September 9, 2015 and filed with the Court on September 18, 2015.  ECF Dkt. #1.  Petitioner seeks relief from his convictions and sentence for rape and importuning entered by the Lorain County, Ohio, Court of Common Pleas.  *Id.*  On March 8, 2016, Respondent, Ernie Moore ("Respondent"), Warden of the Lebanon Correctional Institution in Lebanon, Ohio, where Petitioner was housed at the time he filed his petition, filed a return of writ.[1]  ECF Dkt. #6.  Petitioner filed a traverse to the Return of Writ on April 19, 2016.  ECF Dkt. #8.

For the following reasons, the undersigned RECOMMENDS that the Court DISMISS Petitioner's federal habeas corpus petition in its entirety with prejudice.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

   A.      **Factual Background**

The Ninth District Court of Appeals of Ohio set forth the following facts of this case on

---

[1] Petitioner is now incarcerated at the Ross Correctional Institution in Chillicothe, Ohio, of which Mark Hooks is Warden.  *See* ECF Dkt. #9.

direct appeal.  These binding factual findings "shall be presumed to be correct," and Petitioner

has "the burden of rebutting the presumption of correctness by clear and convincing evidence."

28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360–361 (6th Cir. 1998), *cert. denied*,

119 S.Ct. 2403 (1999).

> {¶ 2} In August 2010, Mr. Jones came to stay with L.J., L.J .'s mother ("Mother")
> and L.J.'s three-year-old brother. L.J. was 12 years old at the time. Mother's
> cousin and his girlfriend Tonya Portis were also staying with them. One evening,
> Mr. Jones was in the basement bedroom with Mother's cousin, Ms. Portis, and
> L.J. L.J. was lying down on the bed, and Mr. Jones sat on the bed. According to
> L.J., the lights were turned off, and Mr. Jones moved her shorts to the side before
> inserting his penis into her vagina. Mr. Jones withdrew from L.J. when Mother
> came downstairs. During a power outage a few days later, Mr. Jones had L.J.
> perform fellatio on him in the basement.

> {¶ 3} About ten days after the first incident, L.J. told Mother about what had
> happened between her and Mr. Jones. However, Mother did not file a formal
> report with the police because the police told her that, without evidence, it would
> be L.J.'s word against Mr. Jones' word. In November 2010, Mother discovered
> L.J. chatting with Mr. Jones through Facebook. During the chat session, Mr.
> Jones had told L.J. to delete all of the messages between them but later used
> sexually explicit language referring to both past and possible future sexual
> conduct between himself and L.J. Mother took L.J.'s computer away and called
> the police.

ECF Dkt. #6-1 at 95-96, 103; *State v. Jones*, No. 12CA010262, 2014-Ohio-2228, 2014 WL

2195236, at *1 (Ohio App. 9th Dist. May 27, 2014).

> **B.**     **Procedural History**

>> **1.**     **State Trial Court**

On May 12, 2011, the Lorain County Grand Jury indicted Petitioner on one count of

rape in violation of Ohio Rev. Code § 2907.02(A)(1)(b) and one count of importuning in

violation of Ohio Rev. Code § 2907.07(A).  ECF Dkt. #6-1 at 4-5.  Petitioner entered a plea of

not guilty to all charges.  *Id.* at 6.

2

Petitioner's jury trial commenced on June 11, 2012.  ECF Dkt. #6-1 at 3, 11.  On June 14, 2012, the jury found Petitioner guilty of both charges.  ECF Dkt. #6-1 at 11.

On June 28, 2012, Petitioner filed a motion for a new trial and a motion to continue his sentencing date.  ECF Dkt. #6-1 at 12-22.  His main assertion was that he was denied due process of law and a fair trial when the trial court allegedly "refused to allow Dr. Ramiz Masri to provide testimony in regard to his medical findings based upon his personal examination of the complaining witness," which he asserted "became relevant following the contradictory testimony of the complaining witness and also, by failing to allow Dr. Masri's records to be admitted."  *Id.* at 16.  Dr. Masri was the physician of L.J's mother.  *Id.* at 17.  The court granted the motion to continue the sentencing and after conducting a hearing on the matter, the trial court denied the motion for a new trial.  *Id.* at 23-27.

On July 17, 2012, the trial court sentenced Petitioner to ten years to life in prison on the rape conviction and thirty-six months in prison on importuning, with the sentenced to be served consecutively.  ECF Dkt. #6-1 at 28-29.  He also classified Petitioner as a Tier III Sex Offender.  *Id.* at 29.

### 2.  Direct Appeal

Petitioner, through newly appointed counsel, filed a timely notice of appeal.  ECF Dkt. #6-1 at 33.  In his appellate brief, Petitioner asserted the following assignments of error:

1.  The trial court deprived Appellant of his right to present a defense in violation of the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Ohio State Constitution.

2.  Appellant was denied effective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Ohio State Constitution.

3

3.      The guilty verdicts are against the manifest weight of the evidence in violation of Appellant's rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Ohio State Constitution.

*Id*. at 39.  The state appellate court affirmed Petitioner's convictions and sentences on May 27, 2014.  *Jones*, 2014 WL 2195236, at *1; ECF Dkt. #6-1 at 95.

On June 30, 2014, Petitioner, *pro se*, filed a timely notice of appeal in the Ohio Supreme Court.  ECF Dkt. #6-1 at 109-10.  In his memorandum in support of jurisdiction, he asserted the following propositions of law:

1.      The Trial Court deprived Jones of his right to present a defense in violation of the Sixth and Fourteenth amendments to the United States Constitution, and Article [I], Section 10 of the Ohio Constitution.

2.      Jones was denied Effective Assistance of Counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution.

*Id*. at 117-118.  The Ohio Supreme Court declined to accept jurisdiction on October 8, 2014.  *Id*. at 158.

### 3.      Motion for Delayed Reconsideration

Meanwhile, on August 11, 2014, Petitioner filed a *pro se* motion for delayed reconsideration in the Ohio appellate court of that court's May 27, 2014 decision overruling his third assignment of error.  ECF Dkt. #6-4 at 159-210.  On October 23, 2014, that court denied the motion for reconsideration as untimely, lacking in extraordinary circumstances to justify the untimely filing, and otherwise lacking an obvious error in the original decision.  *Id*. at 227-28.

### 4.      Post-Conviction Proceedings

On October 28, 2014, Petitioner, *pro se*, filed a post-conviction petition in the state trial court, also requesting appointment of an expert and an evidentiary hearing.  ECF Dkt. #6-1 at

4

229-37.  He asserted the following two grounds for relief:

1. There were [*sic*] no investigation or a subpoena being issue[d] for a computer or internet bill under my name to prove that I sent any messages.  The only reason why I was convicted is because there were Facebook chats under my password and email.

2. African Americans were biased of being on a jury because the complaining witness that made the claim of rape is half caucasion [*sic*] and underaged.

*Id*. at 232, 234.  On November 14, 2014, the trial court denied the petition as untimely and failing to meet the burden of overcoming the statutory requirements that would allow the petition to be filed beyond the 180-day time requirement.  *Id*. at 238.

### 5. Rule 26(B) Application to Reopen Direct Appeal

On August 12, 2015, Petitioner filed a *pro se* application in the Ohio appellate court to reopen his direct appeal pursuant to Rule 26(B) of the Ohio Rules of Appellate Procedure.  ECF Dkt. #6-1 at 239-56.  In his application, he claimed that his appellate counsel was ineffective for failing to raise on direct appeal that there was insufficient evidence to support his convictions of both rape and importuning.  *Id*. at 242.  On September 24, 2015, the Ohio court of appeals denied his application as untimely and lacking in good cause to excuse the untimeliness.  *Id*. at 257-58.

## II. FEDERAL HABEAS CORPUS PETITION

Petitioner, *pro se*, filed a § 2254 federal habeas corpus petition on September 18, 2015. ECF Dkt. #1.  He asserts the following two grounds for relief:

1. The trial court deprived Appellant of his right to present a defense in violation of the Sixth and Fourteenth [A]mendments to the United States Constitution, and Article One, Section 10 of the Ohio Constitution.

   Supporting Facts: The victim in my case, L.J., was taken by her mother to be examined by Dr. Ramiz Masri of the EMH Regional System. Dr. Ramiz performed a pelvic examination on L.J. and prepared a report regarding his examination which was forwarded

5

to the Elyria Police Department, the Lorain County Prosecutor's Office, and was disclosed to the defense in discovery. Dr. Ramiz concluded that L.J.'s hymen was intact, but a "little loose." (Tr. at 197) During cross-examination, L.J. was questioned about her visit to Dr. Masri, and was specifically asked about the state of her hymen. L.J. testified that she thought it was "torn." (Tr. at 174-75) She also testified that [Petitioner's] penis went "all the way" into her vagina. (Tr. at 171) I sought to have my defense counsel call Dr. Ramiz to testify to rebut L.J.'s testimony that her hymen was "torn," and to show that the state of her hymen was inconsistent with her claim that my penis went "all the way" into her vagina. However, the trial court refused to allow Dr. Ramiz to testify regarding his findings, and refused to allow my counsel to introduce his report through Detective Dietsche and Ms. Mudd (L.J.'s mother).

2.    I was denied effective assistance of counsel in violation of my rights under the Sixth and Fourteenth Amendments to the United States Constitution.

    <u>Supporting Facts</u>: My defense counsel failed to subpoena Dr. [Ramiz] Masri because he thought the state was going to call him as a witness. However, the state did not do so. As a result, Dr. Masri did not appear, and my counsel did not request a continuance to secure his attendance. Dr. Masri's testimony was vital to impeach L.J.'s testimony, and without it the jury was left with mistaken information.

*Id.* at 3-4.

On March 8, 2016, Respondent filed an answer/return of writ.  ECF Dkt. #6.  On April 19, 2016, Petitioner filed a traverse.  ECF Dkt. #8.

## III.    <u>PROCEDURAL BARRIERS TO REVIEW</u>

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a writ of federal habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S.

6

725, 731 (1993).

### A. Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgment became final.  28 U.S.C. § 2244(d)(1). Respondent does not challenge the timeliness of Petitioner's habeas petition.

### B. Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).  To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court."  *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated. *McMeans*, 228 F.3d at 681 (citing *Petrucelli v. Coombe*, 735 F.2d 684, 688–89 (2nd Cir. 1984)).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims.  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  A petitioner fairly presents the substance of his federal constitutional claim to the state courts by:  (1) relying upon federal cases that use a constitutional analysis; (2) relying

7

upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of

constitutional law or in terms sufficiently particular to allege the denial of a specific

constitutional right; or (4) alleging facts that are obviously within the mainstream of

constitutional law.  *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004) (quoting *Newton v.*

*Million*, 349 F.3d 873, 877 (6th Cir. 2003)); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th

Cir. 1993), *cert. denied*, 509 U.S. 907 (1993).  In *Harris v. Lafler*, the Sixth Circuit laid out the

options that a district court may pursue in dealing with a petition that contains unexhausted

claims:

> When faced with this predicament in the past, we have vacated the order granting
> the writ and remanded the case to the district court so that it could do one of four
> things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125
> S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner
> returns to state court to raise his unexhausted claims, *id*. at 275, 125 S.Ct. 1528;
> (3) permit the petitioner to dismiss the unexhausted claims and proceed with the
> exhausted claims, *id.* at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion
> requirement altogether and deny the petition on the merits if none of the
> petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

553 F.3d 1028, 1031–32 (6th Cir. 2009).  The Supreme Court has held that "the petitioner has the

burden ... of showing that other available remedies have been exhausted or that circumstances of

peculiar urgency exist."  *Darr v. Burford*, 339 U.S. 200, 218–19 (1950), overruled in part on

other grounds, *Fay v. Noia*, 372 U.S. 391 (1963).  A petitioner will not be allowed to present

claims never before presented in the state courts unless he can show cause to excuse his failure to

present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or

that he is actually innocent of the crime for which he was convicted.  *Coleman v. Thompson*, 501

U.S. 722, 748 (1991).

## C.      Procedural Default

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  In these cases, "the state judgment rests on independent and adequate state procedural grounds."  *Coleman*, 501 U.S. at 730.  For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment."  *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991)) (emphasis removed).  When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition.  *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991).  In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there are no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit established a four-pronged analysis to determine whether a claim has been procedurally defaulted under *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule.  *Ford v. Georgia*, 498 U.S. 411, 423–24 (1991).  Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims.  *Coleman*, 501 U.S. at 729–30; *Richey v. Mitchell*, 395 F.3d 660 at 678 (2005) (holding that "a lapsed claim survives if the state

9

court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (holding that if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (holding that even if the issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises).  Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision.  *Munson v. Kapture*, 384 F.3d at 313–14. Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice.  *Coleman,* 501 U.S. at 751.  "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation.  *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985).  If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice.  *Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review federal claims:

that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel*, 301 F. Supp. 2d 698, 722 (N.D. Ohio 2004).

## IV.     STANDARD OF REVIEW

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion, and

procedural default, the AEDPA governs this Court's review of the instant case because Petitioner

filed the instant § 2254 federal habeas corpus petition well after the AEDPA's effective date of

April 26, 1996.  *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir.1997), *cert. denied*, 522 U.S. 1112

(1998).  Under § 2254, a state prisoner is entitled to relief if he is held in custody in violation of

the United States Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of

habeas corpus. The AEDPA provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim—
>
>> (1) resulted in a decision that was *contrary to*, or involved *an
>> unreasonable application of*, clearly established Federal law, as
>> determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable
>> determination of the facts in light of the evidence presented in the
>> State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the

language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the
> state court arrives at a conclusion opposite to that reached by this Court on a
> question of law or if the state court decides a case differently than this Court has
> on a set of materially indistinguishable facts. Under the "unreasonable
> application" clause, a federal habeas court may grant the writ if the state court
> identifies the correct governing legal principle from this Court's decisions but
> unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. 362, 412–13 (2000).  Furthermore, the Supreme Court declared that "a federal habeas

court making the 'unreasonable application' inquiry should ask whether the state court's

application of clearly established federal law was objectively unreasonable."  *Id*.  Elaborating on

11

the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue

the writ simply because that court concludes in its independent judgment that the relevant

state-court decision applied clearly established federal law erroneously or incorrectly.  Rather,

that application must also be unreasonable."  *Id.*; *see also Bailey v. Mitchell*, 271 F.3d 652,

655–56 (6th Cir. 2001).

The Sixth Circuit offers the following guidelines for applying the AEDPA limitations:

A. Decisions of lower federal courts may not be considered.

B. Only the holdings of the Supreme Court, rather than its dicta, may be considered.

C. The state court decision may be overturned only if:

 1. It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal]; or

 2. the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent'; or

 3. 'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case'; or

 4. the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D. Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable. That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' 'An unreasonable application of

federal law is different from an incorrect or erroneous application of federal law.'

E.    Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey*, 271 F.3d at 655–56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).  The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e).  The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact.  *Levine*, 986 F.2d at 1514.  The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), cert. denied, 520 U.S. 1257 (1997).  Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law.  *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

13

## V.     ANALYSIS

### A.     Petitioner's First Ground for Relief:  *Right to Present Defense Violation*

In Petitioner's first ground for relief, he claims that the trial court deprived him of his right to present a defense when it ruled that Dr. Ramiz Masri, the gynecologist of the victim's mother, could not testify about his examination of the victim and other witnesses could not testify about Dr. Masri's findings.  ECF Dkt. #1 at 3-4.  He alleges that Dr. Masri's testimony concerning L.J.'s hymen being intact but a "little loose" would have rebutted L.J.'s testimony that her hymen was torn and contradicted L.J.'s testimony that Petitioner's penis went "all the way" into her vagina. However, the trial court refused to allow Dr. Ramiz to testify regarding his examination. *Id*.

Petitioner raised this claim in state courts.  The state appellate court, the last state court to address the claim, opined:

{¶ 34} In Mr. Jones's first assignment of error, he argues that the court did not allow him to present a defense because a witness that Mr. Jones believed would have helped his case did not testify. We disagree.

{¶ 35} Mother's gynecologist, Dr. Ramiz Masri, examined L.J. in August 2010. Mr. Jones sought to call Dr. Masri to testify. The court stated at various points during the trial that: (1) Dr. Masri's testimony would be barred by the rape shield statute; (2) Dr. Masri's testimony would have been more prejudicial than probative under Evid.R. 403:(3) Dr. Masri's testimony would not have been proper evidence with which to impeach L.J. under Evid.R. 607; (4) Dr. Masri's testimony would have confused the jury as to the legal definition of penetration, and (5) Dr. Masri's report did not list an opinion or qualifications as required by Crim.R. 16(K). Nevertheless, the court told Mr. Jones that he could bring Dr. Masri to court so that the court could question Dr. Masri through voir dire. However, Mr. Jones never presented Dr. Masri to the court for voir dire, and Mr. Jones never requested a continuance to obtain Dr. Masri's presence for voir dire. As a result, the court never definitively ruled on whether Dr. Masri could testify. Thus, contrary to the argument in Mr. Jones's merit brief, the trial court did not ultimately prevent Mr. Jones from calling Dr. Masri as a witness and, therefore, Mr. Jones' argument that the trial court prevented him from presenting a defense is without merit.

14

*Jones*, 2014 WL 2195236, at *6.

Petitioner argues that the trial court's rulings excluding Dr. Masri from testifying and his counsel from introducing Dr. Masri's report regarding the victim through other witnesses "violated [his] federal constitutional right to present a defense, as all of the trial court's justifications for excluding the testimony constituted misapplication of state law."  ECF Dkt. #8 at 7.  He refutes each of the five state-law bases for the court's rulings, including Ohio's "rape shield" law and Ohio evidentiary rules regarding impeachment, relevance, and expert testimony. *Id*. at 7-12.

Respondent counters first that this claim alleges only errors of state law and therefore is not cognizable on federal habeas review.  ECF Dkt. #6 at 15-17.  He further asserts that the basis of the state appellate court's decision – that the trial court did not exclude the testimony at issue – is not an unreasonable determination of fact under AEDPA's § 2254(d)(2).  *Id*. at 18-19.

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, . . . or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, . . . the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'"  *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)) (internal citations omitted:  *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973) (defendant's right to due process in a criminal trial is, "in essence, the right to a fair opportunity to defend against the State's accusations"); *Washington v. Texas*, 388 U.S. 14, 23 (1967) (finding state statute prohibiting principals, accomplices, or accessories in same crime from testifying for each other violated defendant's Compulsory Process Clause right to "compulsory process for obtaining witnesses in his favor"); and *Davis v. Alaska*, 415 U.S. 308,

318 (1974) (finding court's refusal to allow defendant to cross-examine key prosecution witnesses violated defendant's Confrontation Clause right "to be confronted with the witnesses against him" despite state policy protecting anonymity of juvenile offenders)).  Thus, while it is generally true that "alleged errors in evidentiary rulings by state courts are not cognizable in federal habeas review," *Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012), an accused has the constitutional right to present testimony at trial that is "relevant," "material," and "vital to the defense." *Washington v. Texas*, 388 U.S. at 23.

Even so, "[t]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410 (1988).  "A defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1988).  The exclusion of evidence in a criminal trial "abridge[s] an accused's right to present a defense" only where the exclusion is "'arbitrary' or 'disproportionate to the purpose[ ] [it is] designed to serve.'"  *Id.* (quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)).  The Supreme Court has "found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused."  *Id.* (citing *Rock*, 483 U.S. at 58, *Chambers*, 410 U.S. at 302, and *Washington v. Texas*, 388 U.S. at 22–23).

Here, to the extent that Petitioner alleges errors of state law – such as Ohio's "rape shield" statute or evidentiary rules and case law – the undersigned recommends that the Court find that his claim is not cognizable.  *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (citing 28 U.S.C. § 2241); *Engle v. Isaac,* 456 U.S. 107, 121 n.21 (1982) ("We have

16

long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted)).  The only issue, therefore, is whether the challenged rulings were "unconstitutionally arbitrary or disproportionate" in that they "infringed upon a weighty interest of [Petitioner]." *Scheffer*, 523 U.S. at 308.

The undersigned recommends that the Court find that the trial court's ruling was not "unconstitutionally arbitrary or disproportionate."  First, the state court correctly concluded that because Dr. Masri never appeared in court, the trial court had no opportunity to and did not definitively rule that he could not testify.  The court warned defense counsel that if Dr. Masri were to testify as counsel described and as the physician's notes suggested, the court most likely would limit his testimony, if not exclude it altogether.  *See, e.g.*, ECF Dkt. #6-4 at 20-22.  But the court repeatedly advised defense counsel to present Dr. Masri in court so that a voir dire could be conducted in order to determine the admissibility of his testimony.  *See, e.g.*, ECF Dkt. #6-3 at 12-14, 153-54; ECF Dkt. #6-4 at 12-13.  For example, the judge told defense counsel:

> Well then we're going to have to wait until he gets here and find out [his opinion] and then you can proffer his opinion because right now I cannot just accept that that's what you say he's going to say.  You don't have a report to demonstrate that or a witness here – .

ECF Dkt. #6-4 at 12-13.  Without an appearance by Dr. Masri or a court ruling, Petitioner cannot demonstrate that the trial court erred at all, much less committed an error so egregious as to violate his federal due process rights or right to present a defense.

Moreover, even if the trial court's statements on the issue of Dr. Masri's potential testimony could be construed as a ruling, it did not "infringe[] upon a weighty interest of [Petitioner]."  *Scheffer*, 523 U.S. at 308.  The judge summarized his position on the matter for defense counsel after counsel informed him that the subpoena that he issued compelling Dr.

17

Masri to testify was not served, as follows:

> I can't stop you from trying to [reissue the subpoena].  I will state again on the record why I am telling you that his testimony would be very limited if allowed at all on the issue that you are talking about.

> Let me, for the record, I believe that introducing the evidence of his examination note which says the hymen was loose, and that, from that conclusion Mr. Prusak wishes to use that to impeach the credibility of the 14-year-old witness who was 12 at the time who testified on cross-examination that the defendant's penis was, when asked how far did he go in – how far did he go, not how far did he go in, it was just how far did he go, and she said, "All the way," going all the way is not clear to me that that is something that indicates that the penis was inserted a specific distance.  Going all the way can mean having intercourse.  The definition required for rape involves penetration, however slight.

> About five or six lines down from the first question, you, Mr. Prusak asked[,] How long was he in there?

> Answer:

> "Not long.

> He was in the whole way for a few seconds?

> Answer:

> I don't know if he was the whole way in; I never had sex before."

> So the, the potential probative value of trying to impeach her with this report is substantially outweighed by the danger of confusion and unfair prejudice because the jury could think that going in all the way, inserting the penis all the way is a requirement of rape.  It is not, I'm not going to place that information, the potential for confusion in front of the jury in light of the very limited value of impeachment that that would provide.

> Now, if there is an issue that a loose hymen is evidence that there was absolutely no penetration, therefore, no rape occurred, I have not seen an expert report that offers that opinion to allow that to come in, that information in that medical record to come in, because you would be asking the jury to make an inference that requires expert medical testimony and you have not provided this Court with any basis to believe that such testimony would be forthcoming from Dr. Masri who is, your first conversation was this morning and he didn't even know he had been subpoenaed.

18

ECF Dkt. #6-4 at 20-22.

The trial court's well-founded concerns regarding the admissibility of Dr. Masri's testimony belie Petitioner's claim that the physician's testimony would have been "determinative" of his case.  ECF Dkt. #8 at 6.  The undersigned agrees with the state trial court that the doctor's testimony – as represented by defense counsel – was of limited probative value for impeachment of the victim or as an expert opinion, primarily because it would have had little bearing on whether a rape occurred, and it carried a substantial risk of unfair prejudice and confusion to the jury.

Moreover, the claim is entirely speculative.  The record does not show what Dr. Masri's testimony would have been, as, again, he never appeared in court and there was no expert report filed.  In fact, it is unclear whether Dr. Masri would have testified at all, considering his potential liability for having failed to report a potential sexual assault of a minor as required under Ohio law which was raised by the prosecution.  *See* ECF Dkt. #6-4 at 13-14.

The trial court's rulings preventing defense counsel from questioning Chalene Mudd, the victim's mother, and Detective Dietsche about Dr. Masri's examination of the victim and his findings, as reported in his notes, similarly do not implicate Petitioner's constitutional rights. When defense counsel asked the witnesses about the doctor's findings, the court sustained the prosecution's objections on the ground that the information was irrelevant and hearsay.  *See* ECF Dkt. #6-3 at 56-57, 150-60.  As the trial court aptly found, the information was not "relevant," "material," or "vital to the defense."  *Washington v. Texas*, 388 U.S. at 23.  The court's rulings excluding it, therefore, did not "infringe[] upon a weighty interest of [Petitioner]."  *Scheffer*, 523 U.S. at 308.

19

Accordingly, this claim lacks merit, and the undersigned recommends that it be dismissed.

**B.**  **Petitioner's Second Ground for Relief:**  ***Ineffective Assistance of Counsel***

In his second ground for relief, Petitioner argues that he was denied his Sixth Amendment right to the effective assistance of counsel when counsel failed to properly subpoena Dr. Masri, request a continuance to secure his attendance, or ensure that Dr. Masri's report complied with Ohio procedural rules.  ECF Dkt. #1 at 3-4; ECF Dkt. #8 at 12-14.  Petitioner raised this claim on direct appeal in state court, where it was adjudicated on the merits.  *Jones*, 2014 WL 2195236, at **6-7.  Respondent argues this claim lacks merit.  ECF Dkt. #6 at 19-23.

The Supreme Court long has recognized that the Sixth Amendment right to the effective assistance of counsel at trial "is a bedrock principle in our justice system."  *Martinez v. Ryan*, 132 S. Ct. 1309, 1317 (2012).  *See also Gideon v. Wainwright*, 372 U.S. 335, 342-44 (1963). The Supreme Court announced a two-prong test for habeas claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  First, the petitioner must demonstrate that counsel's errors were so egregious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id* at 687.  Second, the petitioner must show that he or she was prejudiced by counsel's errors.  To do this, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.

"*Strickland* specifically commands that a court 'must indulge [the] strong presumption' that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011) (quoting *Strickland,* 466 U.S. at 689-90).  The

20

Supreme Court has observed that the standards imposed by *Strickland* and § 2254(d) are both "highly deferential," so that in applying them together, "review is 'doubly' so." *Harrington v. Richter,* 562 U.S. 86, 105 (2011).

The state appellate court, the last state court to address Petitioner's ineffective-assistance claim, reasoned:

> {¶ 37} In his second assignment of error, Mr. Jones argues that he had ineffective assistance of counsel at trial. We disagree.

> {¶ 38} In order to prevail on an ineffective assistance of counsel claim, a defendant "must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that but for counsel's errors, the proceeding's result would have been different." *State v. Mundt,* 115 Ohio St.3d 22, 2007–Ohio–4836, ¶ 62, citing *Strickland v. Washington*, 466 U.S. 668, 687–688, 694 (1984).

> {¶ 39} Mr. Jones argues that his counsel's performance was deficient because counsel failed to subpoena Dr. Masri to testify, did not request a continuance to bring Dr. Masri to court, and did not ensure that Dr. Masri's report complied with Crim.R. 16(K).3 However, even assuming that counsel's performance was deficient, Mr. Jones does not develop any argument as to how he was prejudiced by counsel's actions. *See Mundt* at ¶ 62; App.R. 16(A)(7).

> FN 3: Although Mr. Jones's brief refers to the relevant provision as Evid.R. 16(K), it is clear he is referring to Crim.R. 16(K).

> {¶ 40} Furthermore, the record is silent as to the substance of Dr. Masri's potential testimony with the only possible evidence being his report.4 However, assuming Dr. Masri had testified consistent with the contents of his report, his testimony would have been that L.J. likely had had sexual intercourse and that her hymen was "a little loose[.]" Assuming under certain circumstances the distinction between a loose hymen versus a torn hymen could be of critical evidentiary significance, we reiterate that Mr. Jones has not explained how the distinction in this case would have affected the outcome of the trial given all of the evidence, including Dr. Masri's indication in his report that he believed it likely that L.J. had engaged in sexual intercourse. Accordingly, assuming that Dr. Masri would have testified precisely as he had written in his report, Mr. Jones has not explained how he was prejudiced by his counsel's failure to have Dr. Masri testify.5

FN 4:  Although Dr. Masri's report was discussed during the trial, it was not proffered or admitted as an exhibit. However, the trial court permitted it to be admitted as an exhibit at the hearing on Mr. Jones' motion for a new trial and, thus, it is part of the appellate record.

FN 5:  To the extent Mr. Jones believes Dr. Masri's testimony would have differed from his report, that is outside the scope of the record on appeal, making postconviction relief the more appropriate avenue to raise those arguments. *See State v. Sheppard*, 9th Dist. Medina No. 10CA0041–M, 2011–Ohio–3516, ¶ 8.

*Jones*, 2014 WL 2195236, at **6-7.

The undersigned recommends that the Court find that the Ohio appellate court did not unreasonably apply *Strickland* in finding that even if defense counsel's failure to properly present Dr. Masri as a witness was deficient, Petitioner did not and cannot show he was prejudiced such that the result of his trial would have been different had the physician testified.  Petitioner's claim is speculative because, as explained above, even if Dr. Masri would have agreed to testify, it is not known what he would have said.  Moreover, if the doctor's testimony would have been consistent with his notes and as represented by defense counsel, the judge most likely would have ruled as he warned defense counsel that he would, significantly limiting the testimony, if not excluding it altogether.

Without proving prejudice, Petitioner cannot prevail on his ineffective-assistance claim – regardless of whether his counsel was deficient.  *Strickland,* 466 U.S. at 697 ("a court need not determine whether counsel's performance was deficient before examining the prejudice suffered").  The undersigned therefore recommends that the Court find that the state appellate court's decision rejecting this claim was neither contrary to, nor an unreasonable application of, *Strickland* and its progeny.

**VI.**   **CONCLUSION AND RECOMMENDATION**

For the above reasons, the undersigned recommends that the Court dismiss Petitioner's federal habeas corpus petition in its entirety with prejudice.

Date: November 2, 2016

                                                            /s/George J. Limbert
                                                           George J. Limbert
                                                           United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).